[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11673
Non-Argument Calendar

_____

D.C. Docket No. 6:09-cr-00082-JA-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEAN PETERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 2, 2021)

Before JILL PRYOR, LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Sean Peters appeals the district court's orders denying his 18 U.S.C. § 3583(e)(1) motion for early termination of supervised release and his motion to reconsider the denial of his § 3583(e)(1) motion. Peters argues that: (1) the district

court violated his First and Fifth Amendment rights by relying on his declaration of innocence to deny his motion; (2) the district court made clearly erroneous findings of fact and improperly weighed the relevant 18 U.S.C. § 3553(a) factors; (3) the district court, in denying his motion for reconsideration, failed to address new evidence and his argument that his life term of supervised release violates the Eighth Amendment; and (4) his supervised release term amounts to cruel and unusual punishment under the Eighth Amendment. After thorough review, we affirm.

I.

We review the district court's denial of a motion for early termination of supervised release for abuse of discretion. United States v. Johnson, 877 F.3d 993, 997 (11th Cir. 2017). We also review the district court's denial of a motion for reconsideration for abuse of discretion. United States v. Simms, 385 F.3d 1347, 1356 (11th Cir. 2004). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." United States v. Khan, 794 F.3d 1288, 1293 (11th Cir. 2015) (quotations omitted). A district court commits clear error if we are "left with a definite and firm conviction that a mistake has been committed," but "[w]here there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." United States v. Smith, 821 F.3d 1293, 1302 (11th Cir. 2016) (quotations omitted).

2

We review constitutional challenges not raised before the district court for plain error. United States v. Moriarty, 429 F.3d 1012, 1018 (11th Cir. 2005). To establish plain error, a defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If these conditions are met, we may exercise our discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

We review jurisdictional issues de novo. United States v. Padgett, 917 F.3d 1312, 1316 (11th Cir. 2019).

## II.

First, we are unpersuaded by Peters's challenges to the district court's denial of his motion for early termination of his supervised release. Supervised release serves rehabilitative ends distinct from the purpose of imprisonment. United States v. Johnson, 529 U.S. 53, 59 (2000). "The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release because [s]upervised release has no statutory function until confinement ends." Mont v. United States, 139 S. Ct. 1826, 1833 (2019) (quotations omitted).

A district court may terminate a defendant's term of supervised release if, after considering the relevant § 3553(a) factors, "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); Johnson, 877 F.3d at 996-98.[1] The district court's order must demonstrate that it considered these factors, but it need not explain how each factor applies or explicitly state that it considered them. Johnson, 877 F.3d at 998. We've said, in the sentencing context, that a defendant's failure to accept responsibility, lack of remorse and likelihood of recidivism were relevant to the nature and circumstances of the offenses, the need to protect the public, and the defendant's characteristics. United States v. King, 751 F.3d 1268, 1281 (11th Cir. 2014).

The First Amendment provides that Congress shall make no law "abridging the freedom of speech." U.S. Const. amend. I. "The Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Echols v. Lawton, 913 F.3d 1313, 1320 (11th Cir.) (quotations omitted), cert. denied, 139 S. Ct. 2678 (2019). At sentencing, however, the First Amendment protects a defendant's speech about "abstract

---

[1] The relevant factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to afford adequate deterrence, protect the public from the defendant's further crimes, and provide the defendant with needed education or treatment; the kinds of sentence and applicable guideline range under the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities between similarly situated defendants; and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a)(1), (2)(B)-(D), (4)-(7).

beliefs" only if those beliefs "have no bearing on the issue being tried." United States v. Serrapio, 754 F.3d 1312, 1322 (11th Cir. 2014) (quotations omitted). In Serrapio, a district court modified the terms of a defendant's probation after he had made light of his conviction in a newspaper article. Id. at 1316-17. We reasoned that since the defendant's statements in the article were relevant to several § 3553(a) factors, like the need to afford adequate deterrence, the First Amendment did not protect them. Id. at 1323. We thus rejected the defendant's claim that the district court had punished him for his abstract beliefs. Id.; see also Dawson v. Delaware, 503 U.S. 159, 166-68 (1992) (holding that the admission of evidence about a defendant's gang membership at a capital sentencing violated the First Amendment because it was irrelevant to his offense or any aggravating or mitigating factors).

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The Amendment speaks of compulsion," guaranteeing only that a "witness not be compelled to give self-incriminating testimony." McKune v. Lile, 536 U.S. 24, 35 36 (2002) (quotations omitted). A defendant's Fifth Amendment right is not violated at sentencing when a court considers his "freely offered statements indicating a lack of remorse." United States v. Stanley, 739 F.3d 633, 652-53 (11th Cir. 2014) (affirming where a district court considered a defendant's denial of guilt during his allocution and did not condition the sentence on his decision to speak or not speak).

5

This Fifth Amendment protection does not end when a person is imprisoned, but incarceration limits the extent of its protection. McKune, 536 U.S. at 36. As a result, a prisoner's Fifth Amendment right against self-incrimination is not violated where his participation in a prison's sex offender treatment program hinges on his admission to having committed his crime of conviction and other offenses. Id. at 29, 47-48. According to the Supreme Court, rehabilitation is a legitimate penal interest and admission of responsibility is a precursor to rehabilitation. Id. at 37, 47-48. Further, the consequences of the prisoner's refusal to admit responsibility and participate in the program -- in McKune, transfer to a prison with fewer amenities -- does not amount to unconstitutional compulsion if it does not extend his term of incarceration or affect his eligibility for good time credits or parole. Id. at 38-47.

Here, Peters's challenges to the denial of his § 3583(e)(1) motion for early termination of supervised release lack merit. His motion stems from the life term of supervised release the district court imposed when Peters was sentenced following his possession and attempt to possess child pornography conviction, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). Specifically, the district court required, as a special condition of supervised release, that Peters participate in a sex offender mental health program. The court noted there were ways Peters could "convince the court after a period of time that [he did not] need to be on supervised release for life," but it "would have to be convinced that [he] did not pose a risk to reoffend."

6

In June 2019, after Peters had served his term of imprisonment and had filed several pro se motions with the district court concerning his supervised release, he filed the instant counseled motion under § 3583(e)(1) and Fed. R. Crim. P. 32.1 for early termination of his supervised release. In February 2020, the court denied the motion, explaining that it had ordered Peters to participate in a mental health program as a condition of his supervised release because it believed it was necessary due to the nature of his offense. However, the court recognized, Peters had been rendered ineligible for the program because he maintained his innocence, so the court had terminated the program requirement in an earlier order, but had continued Peters's life term of supervised release to mitigate the risk he posed to the public.

As for the present motion, the district court said that Peters's failure to finish the program did not "reduce [its] concerns that existed at the time of his sentencing" and that Peters's completion of the program "may have" weighed in his favor under the § 3553(a) factors. But while completing the program may have helped Peters, the court stressed that he "was not and will not be punished for maintaining his claim of innocence." Instead, the court weighed each piece of evidence Peters submitted in support of terminating his supervised release -- including family letters and mental health professionals' opinions -- and found, based on its consideration of the relevant § 3553(a) factors, that Peters still was not entitled to early termination of his supervised release. The court then advised Peters that since he had complied with

every supervised release condition besides the mental health program, it would entertain another § 3583(e)(1) motion at the end of ten years of supervised release.

As for his First Amendment claim, we conclude that the district court did not err, let alone plainly error.[2]  The district court said several times during the hearing on Peters's motion and in its order that it was not punishing him for maintaining his innocence.  To the extent the district court considered Peters's view about his innocence when it remarked on his failure to complete the ordered mental health program, there is no error because Peters's refusal to admit guilt was relevant to the § 3553(a) factors, including the need to provide adequate deterrence, rehabilitation, and his characteristics.  See King, 751 F.3d at 1281.  Thus, we cannot say the district court impermissibly punished Peters for an abstract belief.  See Serrapio, 754 F.3d at 1322-23.  And in any event, assuming the district court erroneously considered Peters's view, Peters has not shown the error was plain because he has not pointed to any controlling precedent directly resolving the issue.  Lejarde-Rada, 319 F.3d at 1291.

Nor did the district court abuse its discretion by violating Peters's Fifth Amendment right to be free from self-incrimination.  As we've observed, the court expressly said it was not punishing Peters for maintaining his innocence.  Further,

---

[2] We review only for plain error Peters's claim that the district court's reliance on his declaration of innocence to deny his motion for early termination of supervised release violated the First Amendment because he did not raise the issue in the district court.  Moriarty, 429 F.3d at 1018.

the court never compelled Peters to admit his guilt within the meaning of the Fifth Amendment. By maintaining his innocence, thereby making him ineligible for the counseling program, Peters was not exposed to a more severe punishment for his offense nor precluded from early termination of his supervised release. The district court had already imposed a life term of supervised release at sentencing and its decision on his § 3583(e) motion was a matter of discretion based on various § 3553(a) factors. Johnson, 877 F.3d at 997-98; cf. McKune, 536 U.S. at 38.

Similarly, the district court did not err when it distinguished Peters's case from other child pornography cases with shorter terms of supervised release. This is because the district court did not compel Peters to admit his guilt simply by noting that those defendants had pleaded guilty. McKune, 536 U.S. at 35-36. Rather, as we see it, Peters's voluntary declaration of innocence is somewhat analogous to a situation where a defendant asserts that he is innocent during his allocution at sentencing -- a factor that may be properly considered. See Stanley, 739 F.3d at 652.

As for Peters's arguments that the district court clearly erred in weighing the evidence, we disagree. First, Peters's mental health counselor, Scott Kern, did not give details to support his opinion that Peters's supervised release conditions were overly restrictive -- by, for example, identifying missed job opportunities or family events -- and Peters did not develop Kern's testimony at the hearing. Further, the

9

district court did not ignore Kern's testimony, but expressly considered it, along with Kern's letter and Peters's sister's letter.

Second, the district court's characterization of Peters's arguments about the seriousness of his offense was not clearly erroneous.  Indeed, the comments Peters made -- albeit drawn from statements in the PSI -- were presented in a way that lessened the severity of his offense and suggested he was wrongly convicted.  The district court did not clearly err in viewing his argument as downplaying his offense.

Moreover, the district court properly acknowledged its obligation to weigh the relevant factors and demonstrated that it did so.  Johnson, 877 F.3d at 998.  So, for instance, it took into account Peters's history and characteristics by weighing his good conduct in prison and on supervised release, the letters from Kern and Peters's sister about the effects of his supervised release, the psychosexual evaluation by Dr. Jeffrey Danziger, and Peters's employment and education. 18 U.S.C. § 3553(a)(1).  It also considered the nature of the offense by addressing his arguments about the seriousness of the offense and his innocence.  Id.  In addition, the district court considered the need to provide treatment by observing that Peters had failed to complete the counseling program originally included as a condition of his supervised release -- and, nevertheless, removed the program as a condition due to Peters's refusal to admit his guilt rather than his successful completion of the program.  Id. § 3553(a)(2)(D).  And even if the district court indirectly considered Peters's position

10

on innocence, it was relevant to the nature and circumstances of his offenses, the need to protect the public, and his characteristics.  See King, 751 F.3d at 1281. Accordingly, the district court acted well within its discretion in weighing all the relevant § 3553(a) factors and denying Peters's motion, and we affirm on this issue.

### III.

We are also unconvinced by Peters's claim that the district court abused its discretion in denying his February 2020 motion for reconsideration.  A motion for reconsideration cannot be used to relitigate old matters, or "raise argument or present evidence that could have been raised prior to the entry of judgment," which includes "new arguments that were previously available, but not pressed."  Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) (quotations omitted).

Subsection (b) of § 3583 establishes maximum terms of supervised release for different classes of offenses.  18 U.S.C. § 3583(b)(1)-(3).  But, § 3583(k) adds:

> Notwithstanding subsection (b), the authorized term of supervised release for any offense under . . . 2252A . . . is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

Id. § 3583(k).

11

In this case, the district court did not abuse its discretion in denying Peters's motion for reconsideration because the motion did not make previously unavailable arguments or rely on new evidence. See Wilchombe, 555 F.3d at 957. So, for example, Peters argued in his 2018 pro se § 3583(e)(1) motion that the internet restriction limited his employment options and his job was commission-based, much like the employment argument raised in his motion for reconsideration. As for his argument on reconsideration that injuries limited his employment opportunities, Peters never said that his newly mentioned shoulder injury arose after the district court denied his counseled § 3583(e)(1) motion. As for Peters's argument on reconsideration about the burdens of his supervised release, the district court considered the effects the conditions had on his daily life in its February 2020 order, as we've already discussed. And Peters's argument on reconsideration that he was unable to attend his uncle's funeral merely reinforced his prior complaints about the restrictive nature of his supervised release conditions.

As for the arguments Peters made on reconsideration based on United States v. Haymond, 139 S. Ct. 2369 (2019), which was issued before the hearing and before the district court's February 2020 order, they were made too late. In fact, Peters referenced Haymond in his reply to the government's response to his counseled § 3583(e)(1) motion and during the hearing on that motion. Nevertheless, Peters did not argue in his counseled § 3583(e)(1) motion nor at the hearing that Haymond

12

rendered his supervised release unconstitutional.    Accordingly, none of the arguments he raised on reconsideration were properly before the court, and we affirm as to this issue as well.

## IV.

Finally, we decline to consider Peters's argument that his life term of supervised release amounts to cruel and unusual punishment under the Eighth Amendment.  In United States v. Almand, we addressed whether a defendant could challenge the validity of his term of supervised release during revocation proceedings under 18 U.S.C. § 3583(g).  992 F.2d 316, 317 (11th Cir. 1993).  We determined that the district court had properly declined to address the defendant's challenge because it amounted to an improper collateral attack on his supervised release.  Id. at 317-18.  We reasoned that a defendant may collaterally attack the validity of his sentence only in separate proceedings under 28 U.S.C. § 2255 and that "[a] sentence is presumed valid until vacated under § 2255."  Id. at 317.

In this case, Peters's § 3583(e)(1) motion was an improper vehicle to contest the validity of his supervised release life term on Eighth Amendment grounds.  Our statements in Almand -- that a sentence is presumed valid until vacated under § 2255 and may only be collaterally challenged through a § 2255 motion -- does not appear to leave room for a collateral attack through a § 3583(e)(1) motion, as Peters tries to do here.  992 F.2d at 317.  This is especially true since Peters did not challenge the

13

validity of his supervised release term on direct appeal or in his § 2255 motion, when he could have done so.  Peters adds that § 3583(e)(1)'s directive -- that courts may terminate a term of supervised release in the interest of justice -- is broad enough to leave room for a challenge like his.  We disagree.  The statute carefully enumerates the factors courts must consider but, conspicuously, it does not provide for the kind of wide-ranging inquiry Peters now seeks.  See 18 U.S.C. § 3583(e).

Nor does Haymond allow for Peters's challenge to the constitutionality of his life term of supervised release. While the defendant in Haymond challenged the validity of the new punishments that were imposed upon the revocation of his supervised release, Peters challenges the validity of a punishment that was imposed at sentencing.  139 S. Ct. at 2373-75, 2383.  Further, Haymond did not invalidate the provision of § 3583(k) dealing with an initial imposition of supervised release for convictions under 18 U.S.C. § 2252A.  139 S. Ct at 2378-81.  Accordingly, we decline to address the validity of Peters's supervised release and otherwise affirm as to this issue.  See United States v. Gibbs, 917 F.3d 1289, 1293 n.1 (11th Cir. 2019) (noting that we may affirm on any ground supported by the record).

**AFFIRMED.**