[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16144

_____

D.C. Docket No. 1:15-cr-00107-JRH-BKE-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RACHEL LEE PADGETT,
a.k.a. Rachel Tobak,
a.k.a. Rachel Rae,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 6, 2019)

Before WILSON and BRANCH, Circuit Judges, and VINSON,[*] District Judge.

BRANCH, Circuit Judge:

Rachel Lee Padgett purports to bring a direct criminal appeal, asserting the government breached the terms of their plea agreement. The government has moved to dismiss for failure to file a timely notice of appeal.

After sentencing, Padgett filed an untitled document in the district court stating her intent to file a collateral attack. We conclude that this filing reflected Padgett's understanding of her waiver of a direct appeal under the plea agreement. Moreover, we conclude that the filing did not comply with the jurisdictional requirements for a notice of appeal under Rule 3 of the Federal Rules of Appellate Procedure. Accordingly, we dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

### A. Padgett's Plea Agreement and Sentencing

Padgett was indicted as a participant in a drug-trafficking conspiracy. In the indictment, she was charged with conspiracy to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 846 (Count 1); possession with intent to distribute a controlled substance, 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C) (Count 8);

---

[*] Honorable C. Roger Vinson, Senior United States District Judge for the Northern District of Florida, sitting by designation.

2

possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C.

§ 924(c)(1)(A)(i) (Count 10); and possession of a firearm by a convicted felon,

18 U.S.C. §§ 922(g), 924(a)(2) (Count 11).

Padgett later signed a plea agreement in which she agreed to plead guilty

to Counts 1 and 11 and the government agreed to drop the other counts.  The

agreement contained a comprehensive appeal waiver:

> Defendant entirely waives her right to a direct appeal of her
> conviction and sentence on any ground.  The only exceptions are
> that the Defendant may file a direct appeal of her sentence if (1) the
> court enters a sentence above the statutory maximum, (2) the court
> enters a sentence above the advisory Sentencing Guidelines range
> found to apply by the court at sentencing; or (3) the Government
> appeals the sentence.  Absent those exceptions, Defendant
> explicitly and irrevocably instructs her attorney not to file an
> appeal.

Padgett further waived her right to collateral attacks—except for an attack based

on ineffective assistance of counsel:

> Defendant entirely waives her right to collaterally attack her
> conviction and sentence on any ground and by any method,
> including but not limited to a 28 U.S.C. § 2255 motion.  The only
> exception is that the Defendant may collaterally attack her
> conviction and sentence based on a claim of ineffective assistance
> of counsel.

The plea agreement also contained a provision that said, "The government will

not object to a recommendation by the U.S. Probation Office that Defendant

receive a two-level reduction in offense level for acceptance of responsibility

. . . ."

3

The government's breach of that final provision is what would be at issue in this appeal if we had jurisdiction over it. At sentencing, the government objected to the acceptance-of-responsibility recommendation based on Padgett's conduct in jail, which it said it learned of the day before sentencing. Padgett, the government alleged, had committed the state-law crime of interference with government property. The government said she intentionally clogged her toilet to flood her cell and then smeared feces on the wall. Padgett's attorney objected to evidence about the incident based on relevance, not based on surprise, and the district court overruled that objection. Her counsel later reiterated that he had not had an opportunity to review the government's evidence and was not, "under the circumstances," prepared to offer any controverting information or evidence. The district court sustained the government's objection to an acceptance-of-responsibility reduction.

The court then pronounced sentence. It accepted the unobjected-to presentencing report, except it did not give the recommended reduction for acceptance of responsibility. It sentenced Padgett to a term of 240 months for Count One and 120 months for Count Eleven to run concurrently, a sentence within the Guideline range. Had Padgett received the reduction, the high end of the Guideline range would have been 210 months. In addition, at the end of the pronouncement, the court explained, "Pursuant to the Plea Agreement, with

4

limited exceptions, Ms. Padgett has waived all rights . . . to appeal this sentence. . . .  She has also . . . waived the right to attack the sentence in any post conviction proceeding."  Neither Padgett nor the government objected.

After sentencing but on the same day she was sentenced, Padgett signed a "Post-Conviction Consultation Certification."  Her attorney acknowledged that she appeared to be of sound mind and able to comprehend the conviction and sentence.  Moreover, he avowed that he had explained her right to appeal to the Eleventh Circuit and how to exercise it.  Finally, he attested that he had advised her on the advantages and disadvantages of an appeal and had "thoroughly inquired of [her] about [her] interest in appealing [her] conviction."  Padgett, in addition to confirming explicitly all these things her attorney had acknowledged, affirmed the following:

> I have decided not to file an appeal, and my attorney has explained
> to me the consequences of failing to do so.  Those consequences
> include the waiver of my right to complain about the process that
> led up to my conviction, including in the future, should I decide to
> seek any form of habeas corpus, 28 U.S.C. § 2255, or other judicial
> relief from the conviction.

### B.  Padgett's September 19, 2016, Filing

On September 19, 2016, Padgett filed *pro se* a two-page document with the district court.  The document was dated September 13, 2016, the same day as her sentencing and her affirmation that she had waived her right to appeal.  The document begins, "Comes now the defendant, to place upon the record, notice of

5

her intent to file a collateral attack with this court, based on the ineffective assistance of her court appointed counsel."

Two different individuals represented Padgett in the district court. Her first attorney withdrew due to a conflict of interest. Padgett's September 19, 2016, filing includes a list of her former counsel's purported misconduct, including, among other things, failing to communicate with Padgett, failing to require mental health records, and failing to work diligently in securing a favorable plea. The filing is captioned "CR 115-107," which corresponds to the district court's docket number. Its second page is titled "Memorandum in Support of Collateral Attack" and "asks that the court take notice of the numerous complaints she has filed with the clerk regarding her court appointed counsel."[1] The district court clerk docketed the filing as a "Notice of Appeal." This Court's clerk then docketed the "appeal."

Padgett's then-counsel moved in this Court to withdraw. This Court granted that motion and appointed new counsel. When Padgett filed her opening brief, the government moved to dismiss, arguing Padgett had not filed a timely notice of appeal.[2]

---

[1] The entire document is aimed at Padgett's former counsel, naming him multiple times. In the concluding sentence, for the first and only time, Padgett mentions both her first and second attorney.

[2] Padgett criticizes the government for waiting until she filed her opening brief to move to dismiss. The government was entitled to do so. *See United States v. Lopez*, 562 F.3d

## II.  DISCUSSION

## A.  Legal Standard

We review jurisdictional issues de novo.  *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009).

Under Rule 3(c)(1) of the Federal Rules of Appellate Procedure, a "notice of appeal *must*" (A) specify the parties taking the appeal; (B) "designate the judgment, order, or part thereof being appealed"; and (C) "name the court to which the appeal is taken" (emphasis added).  "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review."  *Smith v. Barry*, 502 U.S. 244, 248 (1992).

We liberally construe Rule 3's requirements, especially when the litigant is proceeding *pro se*.  *See Finch v. City of Vernon*, 845 F.2d 256, 259–60 (11th Cir. 1988).  "This principle of liberal construction does not, however, excuse noncompliance with the Rule. . . .  Although courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal."  *Smith*, 502 U.S. at 248.[3]  The Supreme Court has articulated a functional-equivalent test, whereby we examine whether the document

1309, 1313 (11th Cir. 2009) ("[A]n appellee may object to the timeliness of an appeal for the first time in its merit brief.").

[3] *Cf. Aldbra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quoting *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002)) ("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants, 'we nevertheless have required them to conform to procedural rules.'").

provides the parties and the courts with sufficient notice that the filer seeks appellate review. *See id.*

## B. Analysis

Most litigants, even when acting *pro se*, know what an appeal is. When they want to file one, they say so. Yet Padgett said in her September 19, 2016, filing that she intended to file not an appeal but a "collateral attack." Moreover, the filing was based solely on ineffective assistance of counsel, the single exception to her plea agreement's collateral-attack waiver. The contents of the filing thus suggest Padgett was well aware of the terms of her plea agreement—specifically, that she had waived her right to a direct appeal but that she had preserved her right to a collateral attack based on ineffective assistance of counsel. It also suggests she was aware of her Post-Conviction Consultation Certification, signed the same day she dated the filing in question, in which she affirmed, "I have decided not to file an appeal."

Padgett's filing is also consistent with our precedents, which require the district court to have the opportunity to examine ineffective-assistance claims before we do. *See United States v. Khoury*, 901 F.2d 948, 969 (11th Cir. 1990) ("[A] claim of ineffective assistance of counsel may not be raised on direct appeal where the claim has not been heard by the district court nor a factual record developed."). The Supreme Court has explained that "in most cases a

8

motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003). That preference stems from the fact that a factual basis for the claim, almost never developed before a direct appeal, can be established during the collateral attack. *See United States v. Arango*, 853 F.2d 818, 823 (11th Cir. 1988).

Given the fact that the plea agreement, the district judge at sentencing, and the Post-Conviction Consultation Certification all explained in clear terms that Padgett had no right to a direct appeal, we conclude that Padgett was aware of her rights. We thus see no reason to construe the document as anything other than what it says it is: notice that Padgett intended to attack her sentence collaterally.

In that light, even liberally construed, Padgett's filing is not the functional equivalent of a notice of appeal. It does not provide notice of intent to "appeal," especially since it is based entirely on presently undeveloped grounds of ineffective assistance of counsel. It does not inform the government or the courts that she seeks direct appellate review. Indeed, it mentions only "this court," referring unambiguously to the district court. At no point does Padgett mention "court of appeals," "Eleventh Circuit," "circuit court," or anything of the sort. Thus, the filing does not comply with Rule 3(c)(1)(C) because it fails

to name any court to which it is appealing—or that she is appealing at all. Although we construe *pro se* filings liberally, we decline to rewrite a filing that, on its face, indicates Padgett was acting according to her correct understanding of her rights. *Cf. GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.") (internal citation omitted), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010).

Padgett makes much of the fact that the district court docketed the filing as a "Notice of Appeal." But how the clerk's office of the district court interprets a filing is, respectfully, not binding on this Court. We also note that when Padgett filed the September 19, 2016, filing, she was still represented by counsel. The district court's local rules forbid *pro se* filings by represented parties: "Absent prior leave of Court, a defendant represented by counsel may not file a motion, brief, or other paper *pro se*, except for a motion for the appointment of new counsel or a motion to proceed *pro se*." S.D. Ga. Crim. R. 44.2. Padgett never obtained "prior leave of" the district court to file her document. Nevertheless, despite admonishing Padgett for various other *pro se* filings, the district court appears to have later itself construed the filing as a

notice of appeal that divested it of the ability to grant Padgett new counsel.[4]  We "give great deference to a district court's interpretation of its local rules."  *Fils v. City of Aventura*, 647 F.3d 1272, 1282–83 (11th Cir. 2011) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008)).  But we need not defer when our own appellate jurisdiction is on the line.  As broad as the district court's discretion may be in interpreting its local rules, the district court abuses that discretion when its interpretation creates a conflict with the jurisdictional requirements of Rule 3.

Finally, we emphasize that a collateral attack is the preferred vehicle for an ineffective-assistance claim.  *Massaro*, 538 U.S. at 504.  Moreover, a movant may assert in her collateral attack a claim for breach of a plea agreement.  *See United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008) ("[A] § 2255 motion may be used to enforce promises made in a plea agreement.").  Padgett may thus still be able,[5] in a § 2255 action, to raise any ineffective-assistance argument, to argue about the government's conduct with respect to the acceptance-of-responsibility reduction, and to seek resentencing or vacatur of her guilty plea.

---

[4] In this Court's February 3, 2017, order appointing new counsel, we said, "The judgment on the defendant's sentence was entered on September 14, 2016, and defendant *pro se* filed a notice of appeal on September 19, 2016, stating her intent to file a collateral attack." That cursory statement is not law of the case. *See United States v. Hatter*, 532 U.S. 557, 566 (2001) ("The law of the case doctrine presumes a hearing on the merits.").

[5] We express no opinion on the timeliness of Padgett's potential § 2255 action.

11

In sum, Padgett's filing indicates that she *intended* to file a collateral attack in the manner her plea agreement expressly authorized.  We take her at her word—at the time of the filing, which was Padgett's only filing within the window for an appeal,[6] Padgett intended to file only a separate collateral attack. That her filing was misdocketed does not vest us with jurisdiction over a direct appeal.

**DISMISSED.**

---

[6] "In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."  Fed. R. App. P. 4(b)(1)(A).

WILSON, Circuit Judge, dissenting:

The jurisdictional requirements of Rule 3(c)(1) are liberally construed. *Smith v. Barry*, 502 U.S. 244, 248, 112 S. Ct. 678, 681 (1992). "An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). I would construe Padgett's pro se filing as a notice of appeal allowing us to exercise jurisdiction. It was properly filed in the district court, with the correct district court docket number. The district court construed the filing as a notice of appeal and transmitted the notice to this Court. It was filed within the 14-day period specified in Rule 4(b)(1).

Moreover, we have said that we will construe a document as a notice of appeal where it is the "functional equivalent" of what Rule 3(c)(1) requires and makes clear the party's intent to seek appellate review. *Rinaldo v. Corbett*, 256 F.3d 1276, 1278–79 (11th Cir. 2001) (construing a motion for an extension of time to file appeal as a notice of appeal where intent was clear).[1]

_____

[1] Padgett has at least one arguable meritorious claim, including whether the government breached her plea agreement by objecting to a sentence reduction for acceptance of responsibility.

13